# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| BOBBY E. OODY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:04-CV-143 |
| V. ) | (Phillips) |
| ) | |
| KIMBERLY-CLARK CORPORATION PENSION ) | |
| PLAN and AETNA INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of the motion for judgment on the administrative record [Doc. 18] filed by defendant and plaintiff's cross-motion for judgment [Doc. 20]. Plaintiff has brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* Plaintiff seeks a determination that he is eligible for permanent disability benefits under the Kimberly-Clark Pension Plan. For the reasons stated herein, defendant's motion will be granted, plaintiff's cross-motion will be denied; and judgment will be entered in favor of defendant.

## Background

Oody, a former employee of Kimberly-Clark Corporation, applied for total and permanent disability pension benefits under the Kimberly-Clark Corporation Pension Plan (the Plan). The claim was considered and denied by the Retirement Committee for the Plan (the Committee) on September 21, 2001. Oody appealed the denial and submitted

additional information for consideration. On November 3, 2003, the Committee again denied the claim. The Committee granted Oody a special review and permitted him to submit additional information in support of his claim. On December 3, 2003, the Committee determined that Oody did not establish that his condition met the Plan's definition of total and permanent disability. Plaintiff filed the instant suit challenging the Committee's denial of his claim.

Oody was employed at Kimberly Clark as a maintenance employee. He was responsible for repairing and maintaining the mechanical and electrical systems in the mill. Considered a physically demanding position, Oody's job required squatting, kneeling, carrying, climbing ladders and stairs, crouching, bending, reaching and standing. Oody began experiencing lower back pain after an on-the-job fall. He received temporary disability benefits from June 7, 1999, until September 5, 1999. He then returned to work until May 2, 2000, when he took a leave of absence due to chronic low back pain. He again received temporary disability benefits from May 3, 2000 through October 31, 2000. Thereafter, Oody received long-term disability benefits through Kimberly-Clark from November 1, 2000 through June 30, 2003, when those benefits were terminated because Aetna determined that plaintiff no longer met the definition of disability under the Plan. Oody was approved for Social Security disability benefits, effective May 2, 2000. On May 17, 2001, he applied for permanent disability benefits under the Plan.

According to the Plan, an employee must meet the following conditions to be eligible for permanent disability benefits: (1) complete five years of vesting service and (2)

terminate employment with Kimberly-Clark due to becoming totally and permanently disabled as defined by the Plan. The Plan defines "total and permanent disability" as:

> A condition arising out of injury or disease which the Committee determines is permanent and prevents an Employee from engaging in any occupation with his Employer commensurate with his education, training and experience. . . .

Under the Plan, the Committee maintains the exclusive responsibility and the sole discretion for determining whether an employee satisfies the eligibility requirements for receiving permanent disability pension benefits.

Kimberly-Clark states that although the evidence submitted in support of Oody's application demonstrated that he had been diagnosed with chronic low back pain, it did not establish that he was totally and permanently disabled as defined by the Plan. Rather, it showed that Oody was capable of returning to light or sedentary work, that he had exaggerated his pain responses, and that he had not reached maximum medical improvement. Kimberly-Clark asserts that the totality of the evidence shows that Oody's condition does not render him totally and permanently disabled as defined by the Plan.

Plaintiff responds that the Committee's decision acknowledged that he cannot perform his former job as a maintenance worker. The decision to deny benefits is based upon the Committee's finding that Oody can perform light or sedentary jobs at Kimberly-Clark, but does not identify specific jobs which he can perform with his work restrictions. Oody asserts that the Committee's decision was not reasonable because Kimberly-Clark failed to identify a specific job available with the company that was commensurate with his

skills, experience, and work restrictions. Therefore, Oody submits he is entitled to an award of permanent disability benefits under the Kimberly-Clark Pension Plan.

### Standard of Review

Because the Kimberly-Clark Pension Plan expressly grants discretionary authority to determine eligibility for benefits to the administrator and other plan fiduciaries, the court reviews the Committee's decision to deny benefits under the "highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life Ins. Co.,* 88F.3d376, 380 (6th Cir. 1996); *see also Firestone Tire & Rubber Co. V. Bruch,* 489 U.S. 101, 115 (1989). Review under the arbitrary and capricious standard is the least demanding form of judicial review of an administrative action, requiring only an explanation based on substantial evidence that results from "a deliberate and principled reasoning process." *Killiam v. Healthsource Provident Adm'rs, Inc.,*152 F.3d 514, 520 (6th Cir. 1998).

### Medical Record

As previously noted, Oody disputes the Committee's decision to deny him permanent disability benefits under the Plan. However, Kimberly-Clark contends that the medical evidence does not support plaintiff's claim that he is totally and permanently disabled as defined by the Plan. Oody has the burden of presenting sufficient proof to support his claim for total permanent disability. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 985 (6th Cir. 1991).

The medical record shows that Dr. Joe Browder noted impairment in plaintiff's musculoskeletal system which restricted plaintiff from performing ordinary work movements, or from working about machinery, or from standing or sitting, except for limited times, or from working, even on sedentary tasks, for a full day. He opined that Oody's condition was permanent and noted that "all limitations are based on patient's subjective complaints of activity limiting pain."

A two-day functional capacity evaluation (FCE) was performed on Oody during October 9-10, 2000. Plaintiff tested in the light work classification according to the Department of Labor standards. Additionally, he scored 9 out of a possible 16 on the Waddell's test, which indicated exaggerated pain behavior. He also tested invalid on 6 of the 7 validity tests indicating that plaintiff was not asserting maximum effort on the tests.

Dr. J. Mark MacNaughton, orthopaedic surgeon, performed an independent medical exam (IME) on plaintiff on April 25, 2001. Dr. MacNaughton opined that Oody could perform sedentary or light work with some restrictions. During his exam, Dr. MacNaughton noted that Oody demonstrated a "theatrical response" and claimed to have "exquisite" pain shooting throughout his entire lumbar spine. Dr. MacNaughton opined that plaintiff was unwilling to work, stating that he did "not believe at that point in time, with his exaggerated symptoms in response to previous work-up, that he would even be able to spend a portion of an hour completing his regular job requirements." Dr. MacNaughton also found "no measurable atrophy" in his lower extremities, and that plaintiff was "quite muscular with excellent tone in his lower legs and thigh musculature."

The Committee found that Oody had yet reached maximum medical improvement based on the fact that he had not followed through on several of the orthopaedic surgeon's recommendations. Noting that plaintiff was "morbidly obese," Dr. MacNaughton stated that "weight control needs to be a major importance . . . more aggressive treatment for his obesity certainly would be beneficial to his overall ambulatory skills and lessen his symptoms. " Because plaintiff has been "fairly recalcitrant to subjective improvements" despite aggressive non-operative treatments for his back pain, Dr. MacNaughton suggested that Oody undergo an EMG nerve study, bone scan, or a laboratory evaluation to rule out other forms of inflammatory arthropathies. Dr. MacNaughton also recommended a CT myelogram for further evaluation of plaintiff's radiculopathy symptoms. The record contains no evidence that plaintiff followed any of Dr. MacNauthton's recommendations.

The medical record also contains a letter from Dr. Randall T. Morton, plaintiff's personal physician, dated July 22, 2003. Dr. Morton opined that Oody was "currently disabled due to multiple medical problems," including degenerative disc disease of the lumbar spine, lumbar radiculopathy, bilateral hip and knee pain, diabetes, and high blood pressure. Dr. Morton stated that the degenerative problems in plaintiff's back, knees and hips would continue on a permanent basis. However, Dr. Morton's report did not contain any objective medical information in support of his opinion that Oody was totally disabled due to multiple medical problems.

In conjunction with the Committee's final review of his claim, Oody submitted a report from Dr. Sidney L. Wallace, orthopaedic surgeon. Dr. Wallace noted that plaintiff weighed 328 pounds and that he had, "according to him, occasional pain into the lower extremity on the right side and had some pain on the left." Based upon x-rays taken, Dr. Wallace diagnosed plaintiff with "lumbar radicular syndrome bilateral as marked degenerative disk disease." Dr. Wallace opined that plaintiff was permanently unable to perform his usual occupation, but did not comment on Oody's residual functional capacity.

## **Analysis**

Under the arbitrary and capricious standard, the court must decide whether the Committee's decision was "rational in light of the Plan's provisions." *Shelby County Health Care Corp. V. So. Council of Ind. Workers Health & Welfare Trust Fund.,* 203 F.3d 926, 933 (6th Cir. 2000). The court cannot substitute its own judgment for that of the Committee and must base its decision solely on the evidence that was available to the Committee at the time the decision was made. *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997). The Committee undertook three different reviews of plaintiff's claim and provided Oody with a comprehensive written report of its findings. Thus, I find that the Committee thoroughly considered all of the evidence submitted in support of plaintiff's application for disability benefits. Based upon the record as a whole, I find the Committee's decision that Oody was not totally and permanently disabled as required by the Kimberly-Clark Pension Plan was well-reasoned and consistent with the weight of the evidence.

The language of the Plan distinguishes it from many long-term disability provisions which require the employee to establish an inability to perform *any occupation*. Here, the employee need only be unable to engage in employment with Kimberly-Clark that is "commensurate with his education, training and experience." Plaintiff asserts that the Committee's decision was not reasonable because it was based upon the assumption that Kimberly-Clark had an "occupation" for an individual whose education consisted of a high school equivalent degree and who could perform "sedentary or light work with limited standing, lifting, squatting, bending and carrying." Oody states that the Committee never examined whether there were any jobs at Kimberly-Clark which met Dr. MacNaughton's criteria; therefore, it was an abuse of discretion to deny benefits without at least identifying specific occupations with Kimberly-Clark which were commensurate with his education, training and experience.

The Plan's definition of total and permanent disability required Oody to provide evidence sufficient to show that his medical condition was totally and permanently debilitating. Although Dr. Browder opined that Oody's restrictions were permanent, he was not a candidate for rehabilitation, and job modifications would not enable him to work with his impairment, Dr. Browder's report does not contain objective medical findings to support his conclusions. In fact, Dr. Browder noted that his conclusions were based entirely upon plaintiff's subjective complaints of "activity limiting pain."

Significantly, the objective medical evidence demonstrated that plaintiff's subjective responses to pain were exaggerated and were not consistent with a number of

-8-

specific medical findings. Plaintiff not only scored 9 out of a possible 16 on the Waddell's test during his FCE, but also tested invalid on 6 of the 7 validity tests. These results strongly suggest exaggerated pain behavior and less than maximum effort by plaintiff during the FCE. In addition, Dr. MacNaughton noted that Oody exhibited a "quite theatrical response" and claimed to have "exquisite pain" during a routine clonus maneuver. Plaintiff's claim that he is severely limited in his physical movement is inconsistent with Dr. MacNaughton's finding that plaintiff had "no measurable atrophy in the lower extremities" and that he was "quite muscular with excellent tone in his lower legs and thigh musculature." Objective medical evidence is more reliable and warrants more consideration than subjective statements, particularly statements that cannot be corroborated by the objective medical information submitted in support of a plaintiff's claim for benefits. *See Bishop v. Met. Life Ins. Co.,* 2003 WL 21659439 (6th Cir. 2003).

Moreover, the evidence does not establish that Oody's condition is permanent. Plaintiff failed to provide any evidence that he had undergone any of the objective tests recommended by Dr. MacNaughton, such as an EMG nerve study, bone scan, CT myelogram, or other laboratory evaluation. Given the discrepancies between the medical opinions based primarily on Oody's subjective complaints of pain and the results of the objective medical tests, I find the Committee's conclusion that the medical evidence did not support a finding that Oody was totally and permanently disabled as defined by the Plan was not arbitrary or capricious. The FCE findings indicated that plaintiff could perform light duty work, and Dr. MacNaughton opined that he was capable of performing sedentary or light work with some restrictions. Finally, Dr. Wallace opined only that plaintiff was unable to

-9-

Case 3:04-cv-00143   Document 28   Filed 10/27/05   Page 9 of 11   PageID #: 284

perform his *usual* occupation. Thus, while the medical evidence suggested that Oody's condition may have precluded him from performing his prior occupation as a maintenance worker, the evidence does not suggest that he was incapable of performing another occupation at Kimberly-Clark.

Finally, neither the Plan nor Sixth Circuit precedent obligates the Committee to identify particular positions at Kimberly-Clark which Oody was qualified to perform. *See Silvey v. FMC Corp. Long-Term Disability Plan,* 103 F.3d 131 (6th Cir. 1996) ("no court has suggested that it is incumbent on a plan administrator to conduct a detailed review of available jobs in order to demonstrate that a plaintiff is employable). The plaintiff has not cited any Sixth Circuit authority for his contrary position. Nor was the decision of the Social Security Administration awarding Oody disability benefits binding on the Committee. Although the Committee did take into account the award of disability benefits, it noted that the Social Security standard does not require that disability be permanent in nature, which is required under the Kimberly-Clark Plan. *See Gallagher v. Reliance Standard Life Ins. Co.,* 305 F.3d 264, 275 (4th Cir. 2002) (where Social Security disability standard is clearly different from the definition of total disability under the plan, there is no obligation to give special consideration to the Social Security determination).

## Conclusion

Because I find that the Committee's decision to deny permanent total disability benefits to Oody was based on substantial evidence resulting from a deliberate and

principled reasoning process, I conclude that Kimberly-Clark's motion for judgment on the record must be granted and plaintiff's motion for judgment on the record must be denied.

**ENTER:**

    s/ Thomas W. Phillips
    United States District Judge